STATE, EX REL. RICHARD C. HUNTER, ATTORNEY GENERAL, APPELLANT, V. HOME SAVINGS & LOAN ASSOCIATION ET AL., APPELLEES.

288 N. W. 691.

FILED NOVEMBER 28, 1939. No. 30542.

*Walter R. Johnson, Attorney General, Rush C. Clarke* and *John Adams, Jr.,* for appellant.

*G. E. Hager, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

JOHNSEN, J.

The state on the relation of the attorney general brought injunction proceedings against Home Savings & Loan Association and Mount Zion Baptist Church (Colored), of Lincoln, to prevent diversion of the use of a certain lot in the city of Lincoln from that prescribed by chapter 92, Laws 1883. The trial court dismissed the petition, and plaintiff has appealed.

Chapter 92, Laws 1883, reads as follows:

"An Act to dedicate to the use of the Mount Zion Baptist Church (Colored) lot number 6 in block 179 in the city of Lincoln.

"Be it enacted by the legislature of the state of Nebraska:

"Section 1. That lot number six in block one hundred and seventy-nine in the city of Lincoln in this state is hereby dedicated to the use of the 'Mount Zion Baptist Church' (Colored), of the city of Lincoln: Provided, however, that said church shall within one year from the passage of this act use and occupy such lot for church purposes; and provided further, that if at any time such church shall abandon the use of said lot for the period of one year the title to said lot shall revert to this state and be disposed of in the manner provided by law for the sale and

disposition of other lots in the city of Lincoln, belonging to the state.

"Section 2. All acts and parts of acts in conflict with this act are hereby repealed.

"Approved February 24th, A. D., 1883."

Defendant Mount Zion Baptist Church (hereinafter referred to as the church) is a religious association organized in 1883. It has occupied and used lot 6, block 179, for church purposes, ever since the enactment of chapter 92, Laws 1883. It duly erected an edifice thereon, and in 1925 obtained a mortgage loan from defendant Home Savings & Loan Association (hereinafter referred to as the loan association) for $8,000, and executed a purported mortgage on the real estate. The mortgage later was foreclosed, and the loan association took sheriff's deed to the property and obtained an order directing that it forthwith be placed in possession.

When it sought to take possession and to oust the church from the property, the state brought this proceeding. The contention of the state is that the Act of 1883 merely gave the church the use of the property for church purposes, for the benefit of its adherents and the public, and thereby created a religious trust, and that the ousting of the church and the taking of possession by the loan association would be a violation of the dedication and a diversion of the use, which the state was entitled to enjoin.

The loan association's position is that the Act of 1883 was a grant of the fee title to the property, defeasible if the church abandoned the use thereof for a year; that the present suit was accordingly premature; and that the state was in any event estopped to maintain this proceeding.

We are not here concerned with the technical distinction at common law between a dedication and a grant. While the Act of 1883 uses the term dedicate in both its title and body, it must, by modern construction at least, be held to constitute a grant. The question then becomes whether it is a grant of the use or of the fee. It is entitled "An Act to dedicate to the use of the Mount Zion Baptist Church"

the property described. The body of the act provides that such property "is hereby dedicated to the use of the 'Mount Zion Baptist Church,'" if it be used and occupied for church purposes within one year. It will be noted that it is the property itself that is dedicated or granted to the church. True, the grant is made for a particular use or purpose, but there is a sound legal distinction between a grant of property, with a limitation upon its use, and a grant of the use only. If anything further were needed to convince that it was the fee, and not simply the use of the property, which the Act of 1883 intended to grant, it is contained in the proviso in the act that, if the church abandoned the use of the lot for a year, "the title to said lot shall revert to this state." What the church got under the legislative grant, therefore, conditioned, of course, on the use and occupancy of the property within a year for church purposes, was an estate in fee simple defeasible, with a limitation upon its use. 1 Restatement, Property, ch. 4. Whether it was a fee simple determinable or a fee simple subject to a condition subsequent is immaterial to the disposition of this case, and need not now be decided.

In holding that the Act of 1883 was a grant of the title, we have not overlooked the rule that public grants generally are construed liberally in favor of the state and against the grantee. 2 Lewis' Sutherland, Statutory Construction (2d ed.) 1020, sec. 548; 22 R. C. L. 273, sec. 35; *Dubuque & P. R. Co. v. Litchfield*, 23 How. 66, 16 L. Ed. 500; *Langdon v. Mayor, etc., of City of New York*, 93 N. Y. 129. This rule, however, requires a common-sense and not a forced application. A natural and reasonable interpretation must be resorted to in determining the extent of a grant. 59 C. J. 1122. In this connection, it may be pointed out that the legislature has declared generally, without any exception in favor of the state, that "Every conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." Comp. St. 1929, sec. 76-106. Whether this statute applies to grants by deed only, and not to grants by legis-

lative acts, we need not here consider. It is referred to simply to emphasize the point that, under any circumstances, the court must look at a public grant straight forwardly and give it a natural and common-sense construction. Even without regard to section 76-106, therefore, we are clearly of the view that what the Act of 1883 intended, and appropriately did, was to grant the church a fee simple defeasible title to the property.

The next question is whether the state in this situation can maintain an action to prevent a diversion of the use for which the property was granted. The grant to the church was, of course, for a public purpose and one of public benefit, since it was a grant for charitable purposes. *In re Estate of Douglass*, 94 Neb. 280, 143 N. W. 299. In fact, only on this theory would it be sustainable at all, since the legislature was prohibited from donating public lands to private corporations. Const. 1875, art. III, sec. 18. It constituted, however, a direct grant to the church, and not one in trust, but to a large extent it is subject to the same rules as a charitable trust.

In 2 Restatement, Trusts, Introductory Note, Charitable Corporations, p. 1093, it is said:

"Property may be devoted to charitable purposes not only by transferring it to trustees for such purposes, but also by transferring it to a charitable corporation for any of the purposes for which the corporation is organized or for a particular one of its purposes. Where property is given to a charitable corporation, a charitable trust is not created. * * *

"Although a gift to a charitable corporation for one or for any of its purposes does not create a charitable trust, the rules of law which are applicable are to a large extent those which are applicable to charitable trusts, since the ends to be served are the same. The differences are due to the fact that different juridical devices are employed."

As to charitable trusts, the attorney general has long been recognized as having the right, in the absence of some statutory limitation, to maintain an action for en-

forcement of the trust, or to prevent a misuse of the property. 10 Am. Jur. 668, sec. 115.5. In 2 Restatement, Trusts, sec. 391, the following statement is made: "Since the community is interested in the enforcement of charitable trusts, a suit to enforce a charitable trust can be maintained by the attorney general of the state in which the charitable trust is to be administered."

The right of the attorney general to maintain such an action is not limited to cases of charitable trusts, but it may be exercised also in cases of gifts to charitable corporations involving a general public interest. This is the view declared by the American Law Institute. "The attorney general can maintain a suit not only to enforce a charitable trust but also to compel a charitable corporation to apply property held by it to the charitable purposes for which it was given to the corporation." 2 Restatement, Trusts, Introductory Note, Charitable Corporations, p. 1094. The rule certainly is a salutary one as applied to a grant which the state itself has made to a charitable corporation for a particular use or purpose. The public interest and purpose necessary to support such a grant of public land in the first instance clearly must be held to be equally sufficient to entitle the state to prevent the property from being diverted to any other use.

The loan association argues that the rights of the state are limited by the provision for reverter, and that no action of any nature can be maintained by it until its reverter rights have accrued. Such a view would hardly further the public purpose for which the legislative grant was made, but would, on the contrary, tend to defeat it. Quite clearly, the interest of the public lies in continuing the use of the property for church purposes by the Mount Zion Baptist Church, and not in hastening a reverter. There could have been no justification for the grant otherwise. The reverter provision, therefore, was intended, in part at least, to encourage and insure the use of the property pursuant to the grant, and to effect a return of the property only when, by abandonment, its continued use for such purpose had been

made hopelessly impossible. It was not designed to re-. strict the right of the state to enforce the terms and purpose of the grant by preventing a diversion of its use.

The attorney general was accordingly entitled to prevent such a diversion on the part of either the original grantee or a third party, and injunction was the proper remedy therefor in this case. It is unimportant upon what technical ground the equitable jurisdiction is predicated,— whether (1) that a grant of public lands to a charitable corporation, though not technically a trust, savors sufficiently thereof, by reason of the public interest and purpose necessary to support the grant; or (2) that the loan association, under its sheriff's deed in this case, became the holder of the title subject to the limitations of the original grant, and so was constituted a trustee for the continued use of the property, for church purposes, by Mount Zion Baptist Church and its adherents; or (3) that the limitation in the Act of 1883, upon acceptance of the grant, constituted a restrictive agreement, on the part of the original grantee and any subsequent holder of the title, to use the property only on the terms and for the purposes for which it was granted, which was enforceable by an injunction, in the nature of specific performance (4 Pomeroy, Equity Jurisprudence (4th ed.) secs. 1341, 1342, 1343).

The contention of the loan association that the state is estopped to maintain this proceeding requires only a momentary consideration. It is argued that the state is not entitled to maintain this suit because it failed to take any steps to keep the loan association from making a mortgage loan on the church property, and because it has not offered to pay the amount of the loan association's indebtedness, which was used to pay for improvements on the property. It is further argued that the state waived any right it may have had to maintain this suit, when it refused to become a voluntary party to the mortgage foreclosure proceedings. These contentions are disposed of by the nature of the relief herein granted.

As has already been suggested, if the sheriff's deed oper-

ated to vest legal title in the loan association, such title was taken subject to the purpose and use fixed by the Act of 1883. Under the legislative grant, it was intended that the property should be used only for church purposes and by the Mount Zion Baptist Church. Its use for any other purpose or by any other party would constitute a diversion. In this situation, no one could acquire title to the property except as a trustee. If the loan association chose to take a mortgage on such a title, and, through foreclosure, to acquire a naked legal title to the property, as a trustee, it was, of course, at liberty to do so. As against the state, however, it could not divert the use of the property, or, in other words, prevent its use by Mount Zion Baptist Church for church purposes. Obviously, the grounds urged as an estoppel against the state would not under these circumstances prevent it from enjoining the diversion threatened in this case.

The judgment is reversed and the cause remanded, with directions to enter a decree in conformity herewith.

REVERSED.